May it please the court, Eric Levin for petitioner, Joshua Frost. I would like to reserve two minutes for rebuttal. On Mr. Frost's direct appeal, the Washington Supreme Court unanimously held that the trial court had violated Mr. Frost's right to counsel in due process when it precluded his attorney from arguing both that the state had failed to prove accomplice liability beyond a reasonable doubt and that Mr. Frost had participated in the offense under duress. Despite correctly identifying the governing legal principle from Herring v. New York and In re Winship, a bare majority of the court declined to find the errors structural in nature. The decision to evaluate the errors under the harmless error standard was contrary to Herring, which found that denying the defense the opportunity to present his theory of defense in summation was per se reversible error. The five-member majority then unreasonably applied federal structural error law and found that denying Mr. Frost that opportunity to present his theory of defense in summation was subject to the harmless error review. The dissenting four justices correctly noted that the error was structural and required reversal. So you read Herring as saying the defense is entitled to present any argument that it wishes in defense and if a trial court refuses to permit that, that is structural error, not subject to harmless error review and per se reversible. No. The court in Herring did recognize the discretion that a trial court has to curtail the scope and the length of a summation. However, what the court in Herring was very clear about was that the right to be heard in summation of the evidence, from a point of view most favorable to the defendant, is a basic element of the adversary fact-finding process. The problem I'm having with your attempt to extend Herring is that Herring is a complete denial of any closing argument whatsoever. And yet in the context of deciding that question, the court spends a fair amount of time saying, now we're not saying that a trial judge doesn't have discretion to limit the scope of closing arguments, but that exactly what can be limited and what must be allowed isn't set forth in Herring. So aren't we in a situation here where the Washington Supreme Court looked at Herring, said, yes, we think there may be a due process violation, but because some argument was permitted, we're going to apply harmless error review, and that's a question that the Supreme Court of the United States has never answered. So under AEDPA review, don't we have to give deference to the ruling of the Washington Supreme Court until the United States Supreme Court says otherwise? Okay. A whole lot of questions there. Let me go through them. First of all, no one here is saying that this was the type of limitation of a closing argument that is traditionally reserved for the trial court to properly exercise. This was an error by the trial court in reading Washington state law, and the Washington Supreme Court is unanimous on that point. Secondly, certainly in many ways, the error here was far more egregious than the error that occurred in Herring. In Herring, which was a bench trial, the defendant in that case presented his argument concerning reasonable doubt to the judge in the motion for a trial order dismissal at the close of the people's case, and the dissent in Herring makes great hay of this. However, despite that fact, the decision of the court held that the right to be heard in summation, from a point of view most favorable to the defendant, is one that the prejudice of which cannot be assessed, and therefore it was per se reversible error, and that the premises of our adversarial system of justice is partisan advocacy, and no moment is more important than the summation. But if the jury had heard nothing about reasonable doubt, I think you would have a stronger argument. The majority of the Washington Supreme Court looked at the jury instructions and the closing arguments and found that the jury was well informed that it had to determine each of the elements by proof beyond a reasonable doubt. So in essence, as I read the State Supreme Court opinion, the jury considered both defenses, failure to prove beyond a reasonable doubt and duress. I disagree. You don't read the State Supreme Court as saying that? Well, I think the State Supreme Court certainly did say that the jury was properly instructed, and that is not the issue that we are presenting. That collapses the issues, doesn't it? I'm sorry? That collapses harmless error into the structural error, almost, the way the Supreme Court phrased it. It doesn't actually make the decision and then decide. Well, the error here wasn't an instructional error. The error was that the – an instructional error, if I was not clear. The error here was that the judge instructed the defense lawyer that you must admit the elements of the offense if you want the duress defense. So it wasn't an issue with the juror not being properly instructed. It was that Mr. Frost was denied assistance of counsel. That instruction from the court effectively turned his own counsel into a counsel for the State. But as a practical matter, don't you agree that in presenting a duress instruction, by necessity you have to concede that the conduct occurred and that your client engaged in the conduct. Then you go on to argue duress as an affirmative defense or a justification or an excuse for having done it. I agree that duress is an affirmative defense. I believe that the trial court judge in Mr. Frost's case fell into the same trap, which is it may be that in order to get that affirmative defense, they have to find you first guilty of the offense. That does not mean that your counsel need admit that you committed the offense, particularly in a – Well, you didn't listen to my question because it's a very subtle distinction, I think, and that is that you're not admitting criminal liability for the charge. You are conceding that all of the behavior occurred and that your client was involved in it, but now you have an explanation to the jury, which is a legal excuse for otherwise engaging in the criminal conduct. That's the distinction that I understand. The Washington Supreme Court here made a factual finding that is of benefit to the court, which is that they found that there was a basis for arguing reasonable doubt as to accomplice liability. And in particular, these were a series of five incidents. There were some of them, many of them in which Mr. Frost was not at the scene, but was outside the scene as a driver. And with respect to those, there certainly was an argument that could have been presented, but wasn't, that he did not know, did not enter into the state of mind that would make him criminally responsible. It is then possible to argue that for those with respect that he was, he again would be entitled to the duress defense. That duress defense was presented. However, criminal liability, the elements were never challenged. And in fact, with respect to many of the incidents, as a result of that, the trial court's direction to the defense lawyer, he conceded liability on many of the crimes. And when he challenged liability, it was not based on a theory of applying fact to law. It was nothing more than a plea for mercy. He said... Actually, the state supreme court basically said that this conundrum put forth by the trial court actually lessened the prosecutor's burden, correct? Absolutely. I mean, that's really the constitutional problem here. It's not a question of don't argue so long or you argue too much under arrest. It's you have a gag order. You can pick box A or box B, right? It was even worse than a gag order. It was turning the defense lawyer into a puppet, conceding liability. Not only not saying anything, but affirmatively conceding liability. I do want to get to the question of whether this is an extension of Herring or not. I'll reserve that because I think the state will be talking about that. All right. May it please the Court. John Sampson, Assistant Attorney General for the Respondent. As this Court is aware, Herring v. New York is the only Supreme Court case that comes close to this issue. But in Herring, the Court did deal with a statute that utterly prohibited closing summation by counsel. And the judge in that case absolutely prohibited closing argument. The Supreme Court held if you have an absolute denial of closing argument, that violates the defendant's right to counsel and the right to argue his case. Is it your position, though, that nothing short of that could ever rise to the level of structural error? Your Honor, what I'm arguing is that under the lens of habeas purview, the issue is what has the Supreme Court held. And the Supreme Court may very well held someday that this is structural error. But the Court has not yet held that. And for that reason, there is no clearly established federal law. And the state Supreme Court's decision that this is not structural error was not an unreasonable act. So you don't allow for any room of reasoning by analogy or saying that the facts are close enough? You don't mean literally, do you, that this has to be that exact situation where it has to be a complete denial of the ability to make a closing argument or summation? I'm not saying that for a Supreme Court case to be a holding applicable in a habeas case, that the facts have to be exact. But this is more than just slightly different facts. This is an entirely different legal issue. It's the same as if when the Supreme Court held in Gideon that there's a right of counsel. And if you utterly deny counsel, there's a Sixth Amendment violation. But then not until 1984 did they decide Strickland v. Washington, and they say this is the proper standard for deciding when counsel's errors at trial are a Sixth Amendment violation. Let me just ask you, though, on that. This is a case where there's two parts to the defense, correct? Yes, Your Honor. Either the prosecutor didn't establish beyond a reasonable doubt these various elements, or I was under duress, and that is the other reason that you're asking, as a defense lawyer, for the jury to acquit. If you go back to Haring, there's language in Haring. Haring says that the constitutional right of a defendant to be heard through counsel necessarily includes his right to have his counsel make a proper argument on the evidence and the applicable law in his favor. Why doesn't that very clear language from Haring apply here? He was not permitted to make a proper argument on the evidence. Everybody agrees with that. He got half a loaf, maybe, but he didn't get what Haring says. I don't see it as an extension. Part of it is these words are always a little loosey as to whether we're extending or whatever, but why doesn't this fall squarely in that language from Haring? Because, Your Honor, there's always you can always say there's some line where the argument would fall under Haring, but there's also a line where that issue doesn't fall under Haring. I agree with you that there could be cases that would certainly be less clear. This one almost presents us with a dichotomy, which is a very unusual case. And although the judge in this case said you have either reasonable doubt or duress, choose one or the other, it's not a situation where the judge said you cannot argue reasonable doubt. The judge did allow counsel to argue that if he chose to do so, but he would lose his duress defense. And if that occurred, then he wouldn't even have a claim, arguably, because there is no constitutional right to an affirmative defense. And there's a line of cases that talks about errors in instructing the jury on affirmative defenses. Don't even raise a claim for habeas relief. So the judge did give some leeway, and counsel made a choice. And then counsel also, contrary to the petitioner's argument, he didn't concede to the jury that the state had proven all the elements of the crime. And in fact, the counsel asked the judge on Exhibits Record 34 to 35, are you saying I have to tell the jury that we omit all the elements of the offense's charge? And the judge said no. What counsel did was he was able to argue duress. As to the assault charges, where there was no duress, he was able to argue a lack of proof. As to the firearm enhancements, he was able to argue a lack of proof. And so this isn't a clear case where he was completely denied the ability to assert his defenses, which is what Haring is involved. This is a different case. It is farther along, and it would require an extension into a more novel area. And that's what this court did in Conde v. Henry, which was a pre-Edford case, and therefore the court never considered whether this was clearly established, and what this court did in United States v. McGill. And I would point out that in United States v. McGill, Judge Reimer's partial dissent, she stated that Haring never dealt with this particular issue. Haring involved the absolute denial of closing argument, and she would believe that it was not structural error, but was subject to harmless error analysis. So I would indicate that that also shows this issue is not clearly established federal law, because there is this ---- Well, with due respect to Judge Reimer, simply because one judge takes that position, that doesn't somehow change the Ninth Circuit's view of it. You're correct, Your Honor, but the question under AEDPA is would fair-minded judges, if you're looking at was this a reasonable application of Haring, would fair-minded jurists, looking at this, conclude that there's no reasonable way the state Supreme Court could rule the way they did? Well, I guess they had a pretty tight decision down there in Olympia by four, and a very short but pointed dissent by four learned justices from the Supreme Court. So it's kind of hard to do it in a bean-counting way, because if that were the case, we'd say, well, it certainly wasn't unreasonable what they said in their dissent. Correct? Correct, and it's not a bean-counting way. It's what, is it that no fair-minded justice could reach this conclusion? That's what the Supreme Court said in Harrington and Penholster. And again, going back to the right of counsel under Gideon and under Strickland, Gideon and Cronick, where there's a complete denial of counsel, that's structural error. But if you have counsel and then counsel makes constitutionally deficient errors at trial, there's a prejudice element. And our position is that the same applies here. If there's an absolute denial of closing argument, that's structural error. But it was not unreasonable for the state Supreme Court to look at this case, and they're looking at it for the first time, and they're saying under Haring, if you're absolute denial, it's structural error. But when it's less than absolute, harmless error does apply. Okay, let me ask you, let's say there's two counts that are being tried, and the judge says, you can only argue on one. Does Haring apply or not apply? I would submit that, again, that's not clearly established because it's not an absolute denial, but it is certainly a closer question. And the question would be, was that an unreasonable application of Haring at the very least? And a court could arguably reach a decision that it's not an unreasonable application if you're allowed to argue, to present some arguments. But, again, that's a closer situation than we have here. If you have only one hand tied behind your back, then you don't get any relief under Haring in your view. I would say that, yes, Your Honor, because Haring, but even if the court were to say Haring would apply to that situation, it's still then the second issue under AEDPA is, was it an objectively unreasonable application of that? And I'm almost out of time, but I would just point out that the Supreme Court has indicated that structural error applies only in very rare cases. There's a strong presumption that it's harmless. And that's what the state Supreme Court applied. They applied the clearly established federal law on what's harmless and what's structural error. And that was not unreasonable. So even if this court believes Haring applies, that issue on harmlessness was not unreasonable. Doesn't it also depend on the nature of the defense? It seemed to me that the problem that the trial judge was having was that they're almost inconsistent defenses, that in order to establish a duress defense, you almost by necessity have to admit that you've done the crime. Yes, Your Honor. So in response, it seems to me to Judge McEwen's question, wouldn't it depend on the nature of the arguments that the defense wants to make in trying to determine whether it's an objectively unreasonable determination? Yes, and I would point to the argument in this case where counsel conceded essentially in the Gap robbery where Mr. Frost actually went into the house and it was absolutely clear that he was guilty in that case. Find him guilty of that. And that's a normal defense argument that will be made when the evidence is overwhelming on one count but not on others. They'll try to maintain credibility with the jury. Well, you know, that makes common sense to me, but Washington law under Riker, it 100% says that the trial judge just got this one wrong, what's permitted under Washington law. So it's not just a question of common sense. It's a matter of state law that they made the error in state law drove the constitutional determination here, did it not? There was an error in state law, and that then raises the issue, is it constitutional error? And that's when the question is, what has the Supreme Court held and was the state court's decision unreasonable? And that's why we agree there was an error under state law, but we disagree that the state court unreasonably determined that it was not a structural constitutional error. Thank you. Thank you, Your Honor. Yeah. A little bit of time left. Yeah. First, with the question of the lens of habeas review, the Supreme Court has said time and again that it is not the narrowest holding of Supreme Court law. It is the governing legal principle. And in Lockyer v. Andrade, Panetti v. Quarterman, Williams v. Taylor, that is what drives the habeas review. And, in fact, Lockyer v. Andrade looked at a thicket of Eighth Amendment cases conceding that no particular holding was clear. But from that thicket of cases, they came up with this governing legal principle. And I think the court was absolutely right in what the governing legal principle of Haring was, which is that this partisan advocacy is the heart of our adversarial system. I can't think of the name of the case, but then they come down with other decisions, and I believe it was reversing a Ninth Circuit decision, where we said that where a state Supreme Court essentially answers a question that the U.S. Supreme Court has not yet reached, that can never be objectively unreasonable. Well, in this case, the Washington Supreme Court unanimously found that this was error. Well, they found the first prong of it. In order to find a constitutional violation, you have to find error, and then you have to find, in essence, prejudice. And they found the first prong, but not the second. Right. And that is the part that is at issue here, is did they issue a decision contrary to Haring or in a reasonable application of structural error law. And either this result is mandated by the holding in Haring, because Haring said, very pointedly, that if you deprive someone of the opportunity to put fact to law in summation, then we don't know, we can't evaluate the result. Or it falls under that series of structural cases evaluating the difference between harmless error and structural error. If you look at Arizona v. Fulminante, they say that structural error is that which defies the quantitative assessment. If you look at United States v. Gonzalez, they say the real difference between harmless error and structural error isn't this trial court versus framework dichotomy. It's that we can't assess the effect of that error. And that's exactly what Haring said, and that's exactly what the dissent in the Washington Supreme Court noted, that we can't tell how this would have turned out, because that jury was deprived, and Mr. Frost was deprived of the opportunity to present that argument. The respondent says, well, he didn't really concede everything. He went halfway, and I respectfully disagree. If you look at his summation in that part, I'm sorry, this is 196 into 197 of the excerpts. He says, after conceding guilt as to many of the robberies, he says, we're asking you to find him not guilty, and even if you do, not guilty of the guns. You can find him guilty of displaying the guns as an accomplice, I suppose. And then he goes on and says, but you don't have to do it, and we hope you don't. It was nothing more than a plea of mercy. There was no application of fact to law, and it's something that was seized on by the prosecution in rebuttal. And so if the court held one hand behind the back of Mr. Frost, then the prosecution capitalized on that. In the very opening of the rebuttal, he says, notably absent is any reference to the law in that summation, and there is a reason for that, and the reason is because his argument is phony. Well, that wasn't the reason. The reason was because the court had said, if you put fact to law and you contest accomplice liability, then you're losing your addressed offense, and that's a breakdown, a fundamental breakdown, of the basic element of our criminal justice system. But that happens all the time. When a trial judge issues an order in limine, whether it's with regard to argument or evidence in the case, it forces either the defendant or the prosecution to stay away from certain areas for fear that they'll open the door. But not with respect to the burden of proving guilt beyond a reasonable doubt. That's a core issue. I mean, this is not some motion in limine about an evidentiary issue on the side or some sort of other legitimate limitation. This was if you contest that they have not proven beyond a reasonable doubt accomplice liability, you lose your addressed offense, and that's a fundamental breakdown of the criminal justice, the adversarial process, and for that reason we're asking the court to issue the writ. Thank you. Thank both of you for the argument. Very interesting legal issue. Frost v. Boning is submitted.
judges: Guy, McKeown, Tallman